```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,
                                          MEMORANDUM AND ORDER
     - against -
                                          96-cr-149 (KAM)
DERRICK RILEY,


               Defendant.
-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Derrick Riley is serving a sentence of life in prison, plus 65 years, imposed on December 16, 1999. (ECF No. 373.) He moves for a reduction of his sentence to time served for his non-firearm offenses and to 5 years for each of his firearm offenses pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 501 ("Def. Mem.") at 12.) The Court respectfully denies Mr. Riley's motion.

## BACKGROUND

On December 12, 1997, a grand jury in the Eastern District of New York returned a fifth superseding indictment against Mr. Riley and two co-defendants, alleging numerous counts related to, *inter alia*, racketeering, murder in aid of racketeering, Hobbs Act robbery, drug distribution, money laundering, credit card fraud, and various firearms charges. (*See* ECF No. 140; ECF No. 504 ("Gov't Resp.") at 1-2.)

1

The indictment alleged that the defendants were members and associates of the "Nineties Posse," a criminal organization whose primary goals were, *inter alia*, earning money through selling and distributing illegal drugs, using violence and threats of violence to protect its drug trafficking operations, promoting and enhancing the organization's position with respect to rival criminal organizations, and intimidating and punishing disloyal members. (*See* Gov't Resp. at 1.) During the relevant period between 1992 and 1995, Mr. Riley was allegedly the leader of the Nineties Posse. (*See id.*)

On May 11, 1998, a jury found Mr. Riley guilty of numerous offenses. (*See id.* at 3.)[1] On December 3, 1999, the Honorable Raymond J. Dearie sentenced Mr. Riley to the following: (1) life imprisonment on each of the racketeering, racketeering conspiracy,

---

[1] Specifically, the jury found Mr. Riley guilty of the following: "racketeering, racketeering conspiracy, conspiracy to commit the murder of Donovan Brown in aid of racketeering, the murder of Donovan Brown in aid of racketeering, using and carrying a firearm in furtherance of the murder of Donovan Brown, conspiracy to commit the murder of Mark Walters in aid of racketeering, the murder of Mark Walters in aid of racketeering, using and carrying a firearm in furtherance of the murder of Mark Walters, accessory to the murder of Rennee Harris, conspiracy to murder suspected rivals in aid of racketeering, the assault of suspected rivals in aid of racketeering, using and carrying a firearm in furtherance of the assault of suspected rivals, Hobbs Act robbery conspiracy, Hobbs Act robbery, using and carrying a firearm in furtherance of a Hobbs Act robbery conspiracy and a Hobbs Act robbery, acting as the organizer, supervisor and manager of a continuing criminal enterprise, conspiracy to distribute cocaine, crack and marijuana, two counts of distribution of cocaine, attempted distribution of cocaine, money laundering, credit card fraud conspiracy, and credit card fraud." (Gov't Resp. at 3; *see* ECF No. 243.)

murder of Donovan Brown in aid of racketeering, murder of Mark Walters in aid of racketeering, and continuing criminal enterprise convictions, to be served concurrently; (2) 40 years of imprisonment on each of the cocaine distribution and attempted cocaine distribution convictions, to be served concurrently; (3) 20 years of imprisonment on each of the convictions for assault of suspected rivals in aid of racketeering, Hobbs Act robbery conspiracy, Hobbs Act robbery, and money laundering, to be served concurrently; (4) 15 years of imprisonment on the conviction for acting as an accessory to the murder of Renne Harris, to be served concurrently; (5) 10 years of imprisonment on the convictions for conspiracy to commit the murder of Donovan Brown in aid of racketeering, conspiracy to commit the murder of Mark Walters in aid of racketeering, conspiracy to commit the murder of suspected rivals in aid of racketeering, credit card fraud conspiracy, and credit card fraud, to be served concurrently; (6) five years of imprisonment for the conviction for using and carrying a firearm in furtherance of the murder of Donovan Brown in aid of racketeering, to be served consecutively to any other term imposed; and (7) 20 years of imprisonment for the convictions for using and carrying a firearm in furtherance of the murder of Mark Walters, using and carrying a firearm in furtherance of the assault of suspected rivals, and using and carrying a firearm in furtherance of Hobbs Act robbery conspiracy and Hobbs Act robbery, to run

3

concurrently to each other and consecutively to any other term imposed. (*See* Gov't Resp. at 3 (citing ECF No. 373); Def. Mem. at 2.)

The Second Circuit later vacated the narcotics conspiracy conviction that was charged as a lesser-included offense of the racketeering count but otherwise affirmed the judgment. (Gov't Resp. at 3.) Thereafter, Mr. Riley filed a petition under 28 U.S.C. § 2255, which Judge Dearie denied in its entirety on June 23, 2010, and did not issue a certificate of appealability. (*Id.* at 4.)

On June 9, 2016, Mr. Riley filed a successive habeas petition challenging his firearm convictions, which Judge Dearie dismissed on July 20, 2017, for lack of jurisdiction upon finding the application was "second or successive" pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3). (*See id.*; ECF No. 446, Mem. and Order.) Judge Dearie noted that Mr. Riley had "already filed with the Second Circuit" his motion for leave to file a second or successive § 2255 application," and that the Second Circuit had stayed the motion "pending decisions in other cases believed to bear on the proposed § 2255 claim[]." (ECF No. 446, Mem. and Order at 2.)

On April 14, 2020, the Second Circuit held that Mr. Riley may move to file a successive § 2255 motion, based on *Johnson v. United States*, 576 U.S. 591 (2015) and *United States v. Davis*, 588 U.S. 445 (2019), on the basis that two of the predicates for certain of Mr. Riley's § 924(c) convictions, conspiracy to commit murder and

4

conspiracy to commit robbery, were no longer categorical crimes of violence. (Gov't Resp. at 4; ECF No. 475.) Mr. Riley then moved to vacate several of his convictions based on *Johnson* and *Davis* and separately moved for a sentence reduction pursuant to § 404 of the First Step Act regarding certain of his narcotics-based convictions. (Gov't Resp. at 4.) By order dated May 28, 2021, Judge Dearie denied both motions and further concluded that, even assuming that certain of Mr. Riley's counts were covered offenses under § 404 of the First Step Act, the severity of Mr. Riley's crimes warranted leaving the sentences unchanged. (*See* ECF No. 492 at 16-18; Gov't Resp. at 4.)

On September 14, 2023, this case was reassigned to the Undersigned. On November 12, 2023, following amendments to the United States Sentencing Guidelines ("Guidelines"), Mr. Riley moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), requesting a reduction for time served for his non-firearm offenses and a sentence of 5 years for each firearm offense. (Def. Mem. at 12.) On January 16, 2024, the government filed an opposition. (Gov't Resp.) On February 6, 2024, Mr. Riley filed a reply. (ECF No. 505 ("Def. Reply").) On April 23, 2024, and August 12, 2024, Mr. Riley filed various letters and certificates of program completions regarding his rehabilitation while incarcerated. (ECF Nos. 506, 508.)

5

## **LEGAL STANDARD**

The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), creates an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed. *See United States v. Romano*, 707 F. Supp. 3d 233, 236 (E.D.N.Y. 2023). To be eligible for compassionate release, a defendant must (1) exhaust administrative remedies by requesting compassionate release from prison authorities, (2) show "extraordinary and compelling reasons" for reduction, (3) show the reduction accords with the sentencing factors in 18 U.S.C. § 3553(a), and (4) show that the reduction is consistent with the Sentencing Commission's applicable policy statements. 18 U.S.C. § 3582(c)(1)(A); *see Romano*, 707 F. Supp. 3d at 236 (citing *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021)); *United States v. Vasquez*, 735 F. Supp. 3d 124, 129 (E.D.N.Y. 2024) (noting that "18 U.S.C. § 3582(c)(1)(A)(i) provides that, once a defendant has 'fully exhausted all administrative rights,' the court may reduce his sentence, 'after considering the factors set forth in [28 U.S.C. §] [sic] 3553(a)' if it finds that 'extraordinary and compelling reasons warrant such a reduction,' and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission'").

**DISCUSSION**

I.  **Exhaustion**

A defendant may move for a sentence reduction after the earlier of (1) exhausting all administrative rights to appeal a failure by the Bureau of Prisons ("BOP") to file a motion on the defendant's behalf or (2) the lapse of thirty days from the warden's receipt of any such request. § 3582(c)(1)(A). The exhaustion requirement is not a jurisdictional limitation. *See United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021). If the government does not raise an exhaustion defense, the court may consider the merits of the defendant's motion. *See Romano*, 707 F. Supp. 3d at 236.

Mr. Riley proffers that he submitted a request to the Warden of USP Lewisburg that was received on April 28, 2023, and that thirty days have since lapsed. (Def. Mem. at 5; *see* ECF No. 501-1, Exhibit A.) The government does not contend otherwise. The parties do not indicate whether the Warden responded to the request. Regardless, because the government does not raise an exhaustion defense, the Court may "consider the merits of [the] motion." *Romano*, 707 F. Supp. 3d at 236.

II.  **Extraordinary and Compelling Reasons**

Effective November 1, 2023, the United States Sentencing Commission issued Amendment 814 to the Guidelines, which made several changes to Guideline § 1B1.13, the policy statement

7

relevant for reductions in imprisonment. *See* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). Guideline § 1B1.13 lists various circumstances that may, alone or together, establish extraordinary and compelling reasons for a sentence reduction. Guideline § 1B1.13(b)(6) states, in relevant part:

> (6) Unusually Long Sentence. — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Mr. Riley argues that two changes in law provide extraordinary and compelling reasons for a sentence reduction pursuant to § 1B1.13(b)(6): (1) the now-advisory nature of the Guidelines following *United States v. Booker*, 543 U.S. 220 (2005), and (2) the change in 18 U.S.C. § 924(c)'s penalty provisions following amendments to the First Step Act, which eliminated "stacking" § 924(c) convictions for sentencing purposes in a single prosecution. (Def. Mem. at 6-7.) Mr. Riley further argues that the Court should consider his rehabilitation efforts throughout his years of incarceration in combination with the changes of law. (*Id.* at 8-9.)

8

The Court addresses each argument in turn.

**A. Change From Mandatory to Advisory Sentencing Guidelines**

Mr. Riley argues that because he was sentenced in 1999 under mandatory Guidelines, the fact that the Guidelines are now advisory post-*Booker* constitutes a change in law warranting a sentence reduction under § 1B1.13(b)(6). (Def. Mem. at 6-7.) Mr. Riley has served twenty-six years and argues that his sentence is unusually long; that the *Booker* change in law is not "an amendment to the Guidelines Manual that has not been made retroactive"; and that his offense level of 43 mandated a life sentence under pre-*Booker* Guidelines, which would produce a "gross disparity" between the sentence he is serving and one "likely to be imposed" were he sentenced today. (*Id.* at 7); *see* § 1B1.13(b)(6).

In opposition, the government asserts that Mr. Riley's sentence is not unusually long, given the gravity of his offenses; that *Booker* does not apply retroactively; and that the record fails to indicate that, were he sentenced under the current advisory Guidelines, such a sentence would "produce a gross disparity" between the sentence he is currently serving and one likely to be imposed under the advisory Guidelines. (*See* Gov't Resp. at 7-8); § 1B1.13(b)(6).

The Court finds that, given the circumstances and extent of Mr. Riley's serious and violent conduct, his sentence is not unusually long. The data in Mr. Riley's motion, stating that the

median sentence for the 82 murder cases in the Second Circuit during "fiscal year 2018" was 240 months, does not persuade the Court otherwise. (Def. Mem. at 7.) Mr. Riley's sentence reflects the gravity of his conduct, only part of which includes two murders in aid of racketeering, one accessory to murder of a third individual, and at least three conspiracies to commit murder in aid of racketeering, along with multiple firearms offenses and other serious offenses. (*See* Gov't Resp. at 3, 7-8); *United States v. Santos*, No. 01-cr-537 (ARR), 2024 WL 4212024, at *3 (E.D.N.Y. Sept. 17, 2024), *reconsideration denied*, No. 01-cr-537 (ARR), 2024 WL 4424418 (E.D.N.Y. Oct. 4, 2024) (denying motion for compassionate release and finding life sentence for premeditated murder not unusually long); *United States v. Frias*, 01-cr-307-3 (DLC), 2024 WL 5155128, at *1 (S.D.N.Y. Dec. 18, 2024) (finding defendant sentenced to life in prison for premeditated murder failed to show sentence "was an unusually long sentence for this offense").

Nor does the Court find that the change from mandatory to advisory Guidelines would produce the gross disparity contemplated in § 1B1.13(b)(6) between the sentence Mr. Riley is currently serving and a sentence likely to be imposed under the current advisory Guidelines, "after full consideration of [his] individualized circumstances." § 1B1.13(b)(6). Indeed, were Mr. Riley sentenced today under the advisory Guidelines, his offense

10

level of 43 would result in an advisory range of life, regardless of Criminal History Category. *See* Guidelines Ch. 5 Part A, Sentencing Table; *United States v. Rodriguez*, 96-cr-959 (SHS), 2025 WL 212766, at *1-2 (S.D.N.Y. Jan. 16, 2025) (denying compassionate release motion where defendant sentenced to life for two counts of murder in aid of racketeering, noting "the fact that the Guidelines are now advisory does not mean that a gross disparity would result between the sentence [defendant] received in 1998 and the one he would receive today"). This Court further recognizes that Judge Dearie, in denying Mr. Riley's motion for a sentence reduction under § 404 of the First Step Act, noted that "[c]omprehensive analysis of whether [Mr. Riley's] specific counts are covered offenses...would be academic here in light of the gravity of [his] crimes. Indeed, even if [Mr. Riley] established Section 404 eligibility, the only conscionable exercise of this Court's discretion would be to leave the sentence[] intact." (ECF No. 492 at 16-17.)

Accordingly, the Court finds that the change from mandatory to advisory Guidelines does not constitute an extraordinary and compelling reason warranting sentence reduction.

**B. Change in 18 U.S.C. § 924(c)(1)(C)**

Mr. Riley next argues that changes to the penalty provisions of 18 U.S.C. § 924(c)(1)(C) constitute a relevant change in law warranting a sentence reduction under § 1B1.13(b)(6). (Def. Mem.

11

at 7-8.) When Mr. Riley was sentenced, enhanced penalties applied to any subsequent § 924(c) conviction, regardless of whether the subsequent conviction was a part of the instant offense. (*Id.* at 8). In 2018, the First Step Act modified § 924(c) to apply enhanced sentences only to subsequent § 924(c) offenses committed after a prior final § 924(c) conviction, and not in the same indictment. (*See* Gov't Resp. at 8); 18 U.S.C. § 924(c)(1)(C); *United States v. Haynes*, 456 F. Supp. 3d 496, 502 (E.D.N.Y. 2020) (noting that Section 403 of the First Step Act "took the extraordinary step of outlawing the draconian practice of 'stacking' § 924(c) convictions for sentencing purposes in a single prosecution"). Today, subsequent convictions must be charged in an indictment separate from a defendant's first § 924(c) offense. *See* § 924(c)(1)(C). Here, the § 924(c) charges were in the same indictment, and the government concedes that Mr. Riley "would not have received the same sentence for the additional firearms offenses if he had been convicted today." (Gov't Resp. at 8.)

The government argues, however, that the § 924(c) changes are not retroactive and not applicable to Mr. Riley, who has already been sentenced. (*Id.*) The government further argues that Mr. Riley's multiple life sentences and mandatory consecutive sentence for the first § 924(c) conviction mean that were he sentenced today, any changes in the sentences on the additional § 924(c)

12

convictions would lack practical effect and would not produce a gross disparity. (*Id.* at 8-9.)

As an initial matter, "Section 403 of the First Step Act does not explicitly provide for, nor prohibit, retroactive application and does not provide any automatic or independent relief for those defendants whose sentences involved the stacking of § 924(c) convictions." *United States v. Watts*, No. 92-cr-767 (KAM), 2023 WL 35029, at *6-*7 (E.D.N.Y. Jan. 4, 2023). Courts in this circuit have considered the elimination of stacking in § 924(c) as a change in law satisfying Guideline § 1B1.13(b)(6). *See, e.g.*, *Vasquez*, 735 F. Supp. 3d at 132 (noting that "the Court finds that the significant change in the law surrounding Section 924(c) stacking constitutes an extraordinary and compelling reason to grant Mr. Vasquez's motion" pursuant to § 1B1.13(b)(6)); *United States v. Byam*, No. 12-cr-586-01 (OEM), 2024 WL 1556741, at *6 (E.D.N.Y. Apr. 10, 2024) ("Given that all [the § 1B1.13(b)(6)] conditions are met, the Court may, and indeed does, consider the FSA's change to § 924(c) law itself as an extraordinary and compelling circumstance warranting a reduction of Byam's sentence.").

Nevertheless, Mr. Riley has not shown that a gross disparity would result between the sentence he is serving and "the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6). The statute requiring the mandatory life sentences imposed by Judge Dearie is still in effect. *See* 18 U.S.C. § 1959.

13

Given the multiple concurrent life sentences unrelated to his firearms charges, changes to the additional § 924(c) convictions, which must run consecutively to the life sentences, would have no practical impact on Mr. Riley's overall sentence. *See Rodriguez*, No. 96-cr-959 (SHS), 2025 WL 212766, at *2. Accordingly, any changes to the § 924(c) terms running consecutively to the life sentences would not create a "gross disparity" constituting an extraordinary and compelling reason for sentence reduction. *See, e.g., Rodriguez v. United States*, No. 11-cr-755-3 (KPF), 2024 WL 3966700, at *8 (S.D.N.Y. Aug. 28, 2024) ("[G]iven the multiple terms of life imprisonment that Mr. Rodriguez received, the changes wrought by the First Step Act [to § 924(c)] would not 'produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed,' and thus do not qualify as an extraordinary and compelling circumstance."), *appeal filed*, No. 24-2502 (2d Cir. 2024).

Accordingly, the Court finds that the change in § 924(c)'s penalty provision does not constitute an extraordinary and compelling reason warranting sentence reduction.

**C. Rehabilitation**

In addition to changes in the law, Mr. Riley emphasizes his rehabilitation efforts and contends that they, collectively with his other stated reasons, are sufficient to warrant a sentence reduction. (Def. Mem. 8-9.) The Court strongly commends Mr. Riley's

14

evident rehabilitation efforts, clearly evidenced by exhibits, supplemental letters, and certificates included with Mr. Riley's motion and filed at ECF Nos. 506 and 508. Mr. Riley has maintained a record with zero disciplinary infractions (ECF. No 501-3 at 7), and is participating in, or has completed, numerous programs, including the Suicide Watch Companion team, a hand-selected team. (ECF No. 501-4 at 6, 9.)

Rehabilitation, however, "is not, by itself, an extraordinary and compelling reason" for sentence reduction. § 1B1.13(d); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Rios*, No. 24-673-CR, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025) ("[T]he district court did not abuse its discretion in determining that [defendant]'s rehabilitation, standing alone, did not establish an extraordinary and compelling reason for release, and therefore denying the motion under Section 3582(c)(1)(A)."); *United States v. Saleh*, No. 93-cr-181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (although "commend[ing] [defendant]'s institutional record and efforts at rehabilitation," nonetheless denying compassionate release and noting that "a productive institutional record while incarcerated...is what is expected"), *aff'd sub nom. United States v. Elgabrowny*, No. 20-2254, 2022 WL 1701515 (2d Cir. May 27, 2022).

15

Accordingly, the Court finds that Mr. Riley's rehabilitation efforts alone do not support a sentence reduction.

### III. 18 U.S.C. § 3553(a) Factors

Even assuming Mr. Riley did show extraordinary and compelling reasons, the sentencing factors in 18 U.S.C. § 3553(a) do not favor granting his request for a sentence reduction. *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").

The nature and circumstances of Mr. Riley's offenses, their seriousness, and the need to promote respect for the law, provide just punishment, and adequately deter criminal conduct weigh against a sentence reduction. Mr. Riley's offenses were extensive and violent. He was "the leader" of a criminal organization that earned money through drug trafficking and murders, attempted murders, assaults, robberies, and extortions, and a jury found him guilty of two murders in aid of racketeering and of being an accessory to a third murder. (*See* Gov't Resp. at 1, 3.) The violent and serious nature of Mr. Riley's crimes militate against release. *See, e.g., United States v. Polanco*, No. 07-cr-780 (FB), 2021 WL 1854739, at *1 (E.D.N.Y. May 10, 2021) (finding "§ 3553(a) factors clearly weigh against compassionate release" where, *inter alia*, defendant was "serving a life sentence for orchestrating the murder of two people who he believed had stolen over $300,000 in drug

16

money"); *United States v. Jaquez*, No. 17-cr-415 (PAC), 2021 WL 857364, at *3 (S.D.N.Y. Mar. 8, 2021) (finding "[t]he underlying offense here is very serious: it involves murder," and thus weighed against release when analyzing § 3553(a) factors).

At the same time, the Court, as noted, commends Mr. Riley's clear rehabilitation efforts. The numerous letters and reports from BOP officials and other inmates evidence this rehabilitation. (*See generally* ECF Nos. 501-4, 506, 508.) A Senior Officer Specialist at USP Lewisburg, who states he has known Mr. Riley for over 12 years, describes him as a "model inmate who always mentors hundreds of other inmates," is "the first to volunteer and help staff calm other inmates down," and that he is "an asset to the Prison Population and Staff because of his good character." (ECF No. 501-4 at 2.) The acting Chief Psychologist at USP Lewisburg also describes Mr. Riley as an "asset" to the Psychology Services Department, specifically highlighting his mentorship role for inmates housed in restrictive housing for extensive periods of time. (*Id.* at 3.)

Another Psychology Treatment Specialist describes Mr. Riley as an "ambassador of change" who mentors other inmates and "shows them how to live a pro social lifestyle while in prison." (*Id.* at 4.) Mr. Riley is participating in, or has completed, numerous programs, including the aforementioned Suicide Watch Companion team, a "hand-selected group of inmates" that requires

17

"demonstration of superior institutional adjustment determined through a screening process[.]" (*Id.* at 9.) There is no doubt that Mr. Riley has demonstrated that he is a productive and valuable member of the USP Lewisburg community.

Nonetheless, the Court's consideration of the § 3553(a) sentencing factors warrants the respectful denial of Mr. Riley's motion.

## CONCLUSION

For the reasons above, the Court respectfully denies Mr. Riley's motion.

**SO ORDERED**

Dated:    April 10, 2025
          Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York